**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

SYED SERAMAT SHAHRYAR,

Petitioner,

v. 9:26-cv-1831 (AMN)

DAVID VENTURELLA, *in his official capacity as Acting Director of the Immigration and Customs Enforcement*; MARKWAYNE MULLIN, *in his official capacity as Secretary of the Department of Homeland Security*; TODD BLANCHE, *in his official capacity as Attorney General of the United States*; PHILIP RHONEY, *in his capacity as Acting Field Office Director, Buffalo Field Office, Immigration and Customs Enforcement*,

Respondents.

---

**APPEARANCES** **OF COUNSEL:**

**BOROWSKI WITMER IMMIGRATION LAWYERS** — **MATTHEW BOROWSKI, ESQ.**
4343 Union Road
Buffalo, New York 14225
*Attorneys for Petitioner*

**UNITED STATES ATTORNEY FOR THE NORTHERN DISTRICT OF NEW YORK** — **ALEXIS M. OSBORNE, ESQ.**, Assistant United States Attorney
445 Broadway
Albany, New York 12207
*Counsel for Respondents*

**Hon. Anne M. Nardacci, United States District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Petitioner Syed Seramat Shahryar ("Shahryar" or "Petitioner") is a noncitizen who has resided in the United States for more than five years. Dkt. No. 6 at 1. On or about January 6,

2021, Shahryar entered the United States pursuant to an F-1 student visa to attend Clarkson University. *Id.* After transferring to Hudson Valley Community College, Shahryar was again admitted on an F-1 student visa. *Id.* After Shahryar's legal status lapsed due to his failure to attend classes at Hudson Valley, he received work authorization and filed an application for asylum which remains pending. *Id.*; Dkt. No. 6-1 at 4. This incident was Shahryar's first encounter with United States Immigration and Customs Enforcement ("ICE"). Dkt. No. 6 at 1.

On the morning of September 25, 2026, ICE officers active in or near a Walmart located in Clifton Park, New York, observed a Toyota Prius. Dkt. No. 6-1 at 2. ICE officers conducted a record check and determined that the Prius was registered to Shahryar, and they further determined that their records showed Shahryar's student visa status had lapsed. Dkt. No. 6-1 at 2. ICE officers then followed Shahryar's Prius for approximately one mile before conducting a vehicle stop. *See* Dkt. No. 6-1 at 3. ICE officers approached Shahryar's vehicle, identified themselves, and interviewed Shahryar. *Id.* Shahryar confirmed his identity and "willingly provided" his driver's license. *Id.* At approximately 10:25 a.m., ICE officers had Shahryar exit his vehicle, arrested him, and "placed [him] into handcuffs without incident." *Id.* Shahryar was first taken to the ICE facility in Malta, New York, and then to the Buffalo Federal Detention Facility in Batavia, New York. *See* Dkt. No. 4; Dkt. No. 6 at 2.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2241, a district court is authorized to "grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). It is well-settled that "[n]oncitizens are also entitled to challenge through habeas corpus the legality of their ongoing detention." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (citing

*Boumediene v. Bush*, 553 U.S. 723, 771 (2008)). "The 'necessary scope' of this review and resulting relief 'in part depends upon the [procedural] rigor of any earlier proceedings.'" *Id.* (alteration in original) (quoting *Boumediene*, 553 U.S. at 781). And "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review." *Id.* (first quoting *Boumediene*, 553 U.S. at 781-83, 786; and then citing *I.N.S. v. St. Cyr*, 533 U.S. 289, 301-02 (2001)).

## III. DISCUSSION

According to the Government's records—and despite ICE officers first observing Shahryar's vehicle at least a mile away from his arrest location, if not more,[1] conducting a full investigative vehicle stop where Shahryar willingly confirmed his identity and provided his driver's license, and receiving Shahryar's compliance exiting his vehicle—ICE officers arrested him without a warrant. *See* Dkt. No. 6-1 at 3. While the Government contends that Shahryar's detention is authorized by 8 U.S.C. § 1226(a), *see* Dkt. No. 6 at 2, that provision only authorizes arrest "[o]n a warrant issued by the Attorney General."[2] *See Pablo Eduardo Chacon Labarca v. Bausch*, No. 26-cv-01266, 2026 WL 2364293, at *4 (W.D.N.Y. Aug. 14, 2026) ("§ 1226(a) plainly

---

[1] The Government's documentation gives conflicting details about Shahryar's arrest location. While the narrative states that Shahryar was arrested approximately one mile away from the Clifton Park Walmart, it later lists the "Arrest Location" at an address in Schenectady, approximately nine miles away from the Walmart where ICE Officers first observed him. Dkt. No. 6-1 at 3.

[2] ICE subsequently generated two Form I-200 warrants, one of which was signed at 10:30 a.m. and served on Shahryar at 10:39 a.m., *see* Dkt. No. 6-1 at 3; Dkt. No. 6-2, and the second of which was served on Shahryar at an unknown time at the ICE facility in Malta, New York, *see* Dkt. No. 6-1 at 5; Dkt. No. 6-5. But a "post-arrest administrative warrant [is] plainly invalid," *Garcia Lanza v. Noem*, 822 F. Supp. 3d 326, 333 (E.D.N.Y. 2026), not least because the exigency exception under 8 U.S.C. § 1357 would be rendered superfluous in violation of basic conventions of statutory construction if a post-arrest warrant could satisfy the requirements of Section 1226(a). *See Barbosa da Cunha v. Freden*, 175 F.4th 61, 88 (2d Cir. 2026).

requires the issuance of a warrant to arrest."); *Elkin Johan Vergel Gonzalez v. Rhoney*, No. 9:26-CV-1435, 2026 WL 2327690, at *9 (N.D.N.Y. Aug. 12, 2026) (same).

A separate provision, 8 U.S.C. § 1357, does permit an ICE officer acting without a warrant to nevertheless "arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any [law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens] *and is likely to escape before a warrant can be obtained for his arrest*." 8 U.S.C. § 1357(a)(2) (emphasis added); *see also* 8 C.F.R. § 287.8(c)(2)(ii) ("A warrant of arrest shall be obtained except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). "ICE officers must satisfy both prongs to establish probable cause to effect a warrantless arrest." *Rea v. Ball*, No. 26-cv-1248, 2026 WL 1959270, at *2 (N.D.N.Y. July 2, 2026) (quoting *B.D.A.A. v. Bostock*, No. 25-cv-2062, 2025 WL 3484912, at *7 (D. Or. Dec. 4, 2025)). But the Government has made no showing that Shahryar was likely to escape before ICE officers could obtain a warrant, and the facts in the record plainly cannot support it. The Government's own submission shows that Shahryar was fully compliant with ICE officers, who in any event had sufficient time to issue a warrant before or during the vehicle stop. Moreover, Shahryar has no listed criminal record, a documented history of lawful interaction with immigration officials, and no prior encounters with ICE. *See* Dkt. No. 6 at 1; Dkt. No. 6-1 at 1.

The Court finds that Shahryar's due process rights were violated. Courts apply the three-factor balancing test articulated in *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine the adequacy of process in the context of civil immigration confinement. *See J.U. v. Maldonado*, 805 F. Supp. 3d 482, 497 (E.D.N.Y. 2025) (citing *Velasco Lopez*, 978 F.3d at 851). The three factors are: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an

erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar v. Akshar*, No. 26-cv-118, 2026 WL 699369, at *8 (N.D.N.Y. Feb. 17, 2026) (quoting *Velasco Lopez*, 978 F.3d at 851 (quoting *Matthews*, 424 U.S. at 335)). All three *Mathews* factors cut in Shahryar's favor.

Regarding the first factor, Shahryar has an established and substantial liberty interest in being released from detention. The Buffalo Federal Detention Facility detention facility in which Shahryar is currently held, "'while perhaps not akin to a maximum-security prison," is not 'meaningfully different from at least a low-security penal institution for criminal detention.'" *Persaud v. Ball*, No. 26-cv-00841, 2026 WL 2069859, at *3 (W.D.N.Y. July 17, 2026) (quoting Wilson v. Barr, No. 19-cv-01364, 2020 WL 13554798, at *7 (W.D.N.Y. May 1, 2020)). Shahryar's private interest is thus "the most significant liberty interest there is—the interest in being free from imprisonment." *Black v. Decker*, 103 F.4th 133, 151 (2d Cir. 2024) (quoting *Velasco Lopez*, 978 F.3d at 851); *see Nany v. Blanche*, No. 26-cv-1187, 2026 WL 1842635, at *4 (W.D.N.Y. June 26, 2026) ("Petitioner's liberty interest is even more heightened because the deprivation of his liberty does not stem from any criminal adjudication.").

As to the second factor, failure to secure a warrant subverts the procedure Congress created for immigration arrests and poses a severe risk of erroneous deprivation of Shahryar's liberty interest. Courts have noted the "wide discretion" that Section 1226(a) grants the Government to "arrest *any* person in the United States suspected of being removable." *Seraquive v. Lyons*, No. 26-cv-1522, 2026 WL 2665656, at *3 (N.D.N.Y. Sept. 10, 2026) (quoting *Reyes v. King*, No. 19-cv-8674, 2021 WL 3727614, at *6 (S.D.N.Y. Aug. 20, 2021)). The warrant requirement is the

mechanism by which Congress has bound the discretion in an initial immigration arrest to process—and the very "purpose of requiring an exercise of discretion [under Section 1226(a)] prior to the decision to detain a noncitizen who is not subject to mandatory detention is to prevent an erroneous deprivation of liberty." *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 495 (S.D.N.Y. 2025); *see also Vergel Gonzalez v. Rhoney*, No. 9:26-cv-1435, 2026 WL 2327690, at *9 (N.D.N.Y. Aug. 12, 2026) ("[A]fter-the-fact arrest warrants can be called many things—illegal, improper, and unconstitutional, among them. But whatever label one wishes to apply, the practice is fundamentally at odds with . . . constitutional behavior in this country."). Beyond its importance standing alone, Section 1226(a)'s warrant requirement must be read in concert with Section 1357(a)'s limitation of ICE officers' authority when acting without a warrant. As discussed above, Section 1357(a) limits warrantless arrests to where, *inter alia*, the officer believes the person is likely to escape before a warrant can be issued. 8 U.S.C. § 1357(a)(2). Permitting ICE officers to cure a warrantless arrest with a post-arrest warrant directly subverts the statutory restrictions of Section 1357(a)(2), thus violating basic rules of statutory construction and raising additional due process concerns. *See Barbosa da Cunha*, 175 F.4th at 88. Further, ICE's failure to issue a notice to appear until after Shahryar's arrest, *see* Dkt. No. 6-1 at 5, in violation of the agency's own regulations mandating that arrests occur "[a]t the time of issuance of the notice to appear, or at any time thereafter," 8 C.F.R. § 1236.1(b)(1), only compounds the risk of erroneous deprivation here.[3]

[3] Indeed, some courts in this Circuit have held that the failure to issue a pre-arrest notice to appear is, standing alone, a sufficient due process violation to compel a grant of habeas release—though there is a split of authority on this issue. *See Yeleshev v. Larocco*, No. 26-cv-2294, 2026 WL 1353806, at *4 (E.D.N.Y. May 14, 2026) ("The warrant's *execution* cannot precede the NTA . . . . here, the arrest was effectuated before the NTA was created. That flaw renders the warrant and the arrest invalid.") (citation omitted); *Okeke v. Maldonado*, No. 26-cv-2714, 2026 WL 2056904, at *4 (E.D.N.Y. July 16, 2026) ("[I]f a Form I-200 Warrant is without effect, it cannot serve as the predicate 'warrant issued by the Attorney General' necessary to justify arrest and detention under

Finally, as to the third factor, the Government has a legitimate interest under Section 1226(a) in "'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community.'" *Valdez v. Joyce*, 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). But here, in comparison to Shahryar's weighty liberty interest in freedom from detention, the Government's interest is minimally implicated. Shahryar has been living in the United States for five years and the Government has presented no evidence that he is a danger to the community or a flight risk. The record indicates that he does not have any prior arrests or criminal history, and it further indicates that he has obtained a work permit and is presently following the process to seek asylum. *See Inestroza Carbajal v. Frazier*, No. 26-cv-2778, 2026 WL 1309265, at *4 (E.D.N.Y. May 12, 2026) ("[M]ere lack of status does not present a per se risk of flight.").

"Habeas is at its core a remedy for unlawful executive detention" and "[t]he typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008) (citations omitted). The Government contends that a bond hearing would be a sufficient remedy. Dkt. No.

---

Section 1226(a)."). *But see Gagea v. Maldonado*, No. 26-cv-4817, 2026 WL 2859032, at *2 (E.D.N.Y. Sept. 23, 2026) (noting "[a]n alien may obtain relief based on the violation of a regulation without a showing of prejudice only if the regulation 'is promulgated to protect a fundamental right derived from the Constitution or a federal statute,'" and that Section 1226(a) "is silent on the sequencing of a warrant-based arrest and the issuance of an NTA") (quoting Waldron v. I.N.S., 17 F.3d 511, 518 (2d Cir. 1993)); *Jose Loja Loja v. Acting Field Off. Dir.*, No. 26-cv-5368, 2026 WL 2321934, at *3 (S.D.N.Y. Aug. 10, 2026) (denying relief because "even accepting [petitioner's] contention that ICE failed to comply with the sequencing requirement of 8 C.F.R. § 1236.1(b)(1), he has not shown how that violation prejudiced him."). The Court need not rely on that basis here—unlike the notice to appear, the warrant requirement "plainly" stems from the statute. *Pablo Eduardo Chacon Labarca*, 2026 WL 2364293, at *4. But the neglect of a regulatory right, when considered in combination with the neglect of an interrelated statutory right, properly heightens this Court's concern about an erroneous deprivation. *See Morton v. Ruiz*, 415 U.S. 199, 235 (1974) ("Where the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures. This is so even where the internal procedures are possibly more rigorous than otherwise would be required.") (citations omitted).

6 at 2. But "a hearing is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip a person of the freedom that lies at the heart of the Due Process Clause." *Rocano Buestan v. McShane*, No. 25-cv-8544, 2025 WL 3496361, at *6 (S.D.N.Y. Dec. 5, 2025) (quoting *Chipantiza-Sisalema v. Francis*, No. 25-cv-5528, 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025)). The Court must agree with "other judicial opinions resolving similar matters in this District" and "conclude[] that the appropriate remedy is petitioner's immediate release." *German Rodriguez Lazarte v. Venturella*, No. 26-CV-1534, 2026 WL 2581945, at *5 (N.D.N.Y. Sept. 1, 2026) (citing Parra v. Favro, 26-cv-00363, 2026 WL 1030870, at *7 (N.D.N.Y. Apr. 16, 2026)).

Accordingly, after considering submissions from the parties, *see* Dkt. Nos. 1, 6, 7, the Court grants the Petition for Emergency Writ of Habeas Corpus, Dkt. No. 1, and orders the immediate release of Petitioner.

Accordingly, the Court hereby

**ORDERS** that the hearing scheduled for Thursday, October 8, 2026, at 1:30 p.m., Dkt. No. 2, is **ADJOURNED**; and the Court further

**ORDERS** that the motion by Petitioner's counsel requesting to attending that hearing remotely, Dkt. No. 8, is **DENIED** as moot; and the Court further

**ORDERS** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and the Court further

**ORDERS** that Respondents shall **release Petitioner from custody no later than 5:00 p.m. on October 3, 2026**; and the Court further

**ORDERS** that Respondents shall certify compliance with this Order by filing a status report twenty-four hours after releasing Petitioner from custody, and no later than by 5:00 p.m. on October 4, 2026.

**IT IS SO ORDERED.**

Dated: October 2, 2026
Albany, New York

Anne M. Nardacci
Anne M. Nardacci
U.S. District Judge